## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC**, <br><br> Plaintiffs, <br><br> v. <br><br> **T-MOBILE USA, INC.,** <br><br> Defendant. | Civil Action No. 2:23-cv-487 <br><br><br> **JURY TRIAL DEMANDED** |

---

## **ORIGINAL COMPLAINT**

---

Plaintiffs ASUS Technology Licensing Inc. ("ATL") and Celerity IP, LLC ("Celerity") (collectively, "Plaintiffs") hereby submit this Complaint for patent infringement against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant") and state as follows:

### **NATURE OF THE ACTION**

1.      T-Mobile has infringed and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe, U.S. Patent No. 10,951,359 ("the '359 Patent" or "Patent-In-Suit") (attached hereto as Exhibit A).  Plaintiffs thus file this Complaint seeking a judgment of and relief for patent infringement by T-Mobile.

### **THE PARTIES**

2.      Plaintiff ASUS Technology Licensing Inc. ("ATL") is Taiwanese corporation, with its principal place of business located at No. 115, Li-De Rd., Beitou District, Taipei, Taiwan, R.O.C.  ATL was established in April 2022 by ASUSTeK Computer Inc. ("ASUSTeK") to continue ASUSTeK's long history of development in and contributions to the field of wireless

11270019

communication technologies since 2000.  ATL's mission includes active development of 3G, 4G, and 5G wireless communication technologies, as well as management of an innovative patent portfolio concerning such technologies which has brought abounding contributions to the industry through standards contributions and licensing.  ATL is the owner by assignment of patents, originally owned by ASUSTeK, that are critically important to 3G, 4G, and 5G technologies. Regarding the present litigation, ATL is the owner by assignment of the Patent-In-Suit.

3.      Plaintiff Celerity IP, LLC ("Celerity") is a limited liability company organized and existing under the laws of Texas, with its principal place of business located at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.  Celerity has partnered with ATL to assist with the licensing and enforcement of ATL's patents, including in the present litigation.  Celerity is the exclusive licensee of the Patent-In-Suit.  While Celerity is the exclusive licensee of the Patent-In-Suit, patent owner ATL has agreed to join as a Plaintiff in the present litigation, including to ensure compliance with 35 U.S.C. § 281.  *See Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225 (Fed. Cir. 2019).

4.      Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant") is a corporation organized and existing under the laws of Delaware.  Since November 22, 1999, T-Mobile has been registered to do business in Texas under Texas SOS file number 0012958406.  T-Mobile may be served through its registered agent for service, The Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.[1]

---

[1] Defendant T-Mobile USA, Inc. is a wholly-owned subsidiary of T-Mobile US, Inc. The Plaintiffs did not include T-Mobile US, Inc. as a defendant in this lawsuit because T-Mobile has in other recent cases represented that "T-Mobile US, Inc. is a holding company that does not provide any products, services, or networks."  *Wireless Alliance, LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, No. 2:23-cv-00096, Dkt. 14 ¶ 3 n.3 (E.D. Tex. May 26, 2023); *see also id.*, Dkt. 13 (E.D. Tex. May 26, 2023) (stipulation of dismissal as to T-Mobile US, Inc.).

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338, as this action arises under the patent laws of the United States (35 U.S.C. §§ 1 *et seq.*).

6.      T-Mobile is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

7.      Personal jurisdiction exists generally over the Defendant because T-Mobile has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within Texas, including in the Eastern District of Texas. Personal jurisdiction also exists over the Defendant because T-Mobile, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within Texas, including in the Eastern District of Texas, that infringe one or more claims of the Patents-in-Suit.  Further, on information and belief, T-Mobile has placed or contributed to placing infringing products and/or services into the stream of commerce knowing or understanding that such products and/or services would be sold and used in the United States, including in this District.  T-Mobile is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas.

8.      Plaintiffs maintain a place of business within the Eastern District of Texas. For example, Plaintiff Celerity is incorporated in Texas and has its principal place of business within this District located at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.

9.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391(b)-(c) and/or 1400(b), including but not limited to because T-Mobile has committed acts of infringement in this District and has a regular and established place of business in this District. By way of example and without limitation, T-Mobile makes, uses, sells, offers to sell, and/or imports products and/or services that are accused of infringing the Patents-In-Suit into and/or within this District and maintains a permanent and/or continuing presence within this District.

10.     For example, T-Mobile operates one or more wireless telecommunications networks, including but not limited to under the brand names "T-Mobile," "Metro by T-Mobile," "Sprint Mobile," and "Assurance Wireless" (collectively, the "T-Mobile Wireless Networks"). The T-Mobile Wireless Networks include network infrastructure and provide wireless coverage throughout the United States, including within the Eastern District of Texas.

11.     T-Mobile also advertises in the Eastern District of Texas, including but not limited to advertising the geographic coverage of the T-Mobile Wireless Networks within this District. By way of example and without limitation, T-Mobile's website provides a "5G & 4G Coverage map" that advertises its current 4G and 5G wireless coverage in and around Marshall, Texas.



*See, e.g.*, https://www.t-mobile.com/coverage/coverage-map (last visited October 18, 2023).

12.     T-Mobile also maintains regular and established places of business in this District, including but not limited to multiple "T-Mobile Corporate Offices" located in Frisco, Texas, including at 7668 Warren Pkwy, Frisco, TX 75034, and at 3560 Dallas Pkwy, Frisco, TX 75034.

11270019





*See* https://www.google.com/maps/search/t-mobile+corporate+office,+in+frisco,+tx/ (last visited October 18, 2023).

13.     T-Mobile also operates multiple brick and mortar retail stores in the Eastern District of Texas.  These retail stores are physically located within this District, are regular and established places of business of T-Mobile, and are used by T-Mobile to actively market and sell services for the T-Mobile Wireless Networks that infringe the Patents-In-Suit.  By way of example and without limitation, T-Mobile's website provides a "Find your nearest T-Mobile store in Texas" feature that shows the locations of T-Mobile retail stores within this District.



See, e.g., https://www.t-mobile.com/stores/tx (last visited October 18, 2023); see also https://www.t-mobile.com/stores/locator/ (last visited October 18, 2023) ("Find a store" feature).

14.     By way of example and without limitation, T-Mobile maintains brick and mortar retail stores in this District located, among other places, in Marshall (e.g., 1806 E End Blvd N, Ste 100, Marshall, TX 75670), Longview (e.g., 2108 Gilmer Rd, Longview, TX 75604; and 116 E Loop 281, Ste 101, Longview, TX 75605), Tyler (e.g., 8942 S Broadway Ave, Ste 104, Tyler, TX 75703; 3320 Troup Hwy, Tyler, TX 75701; 3840 State Hwy 64 W, Tyler, TX 75704; and 1400 W Southwest Loop 323, Ste 70, Tyler, TX 75701), Beaumont (e.g., 5899 Eastex Freeway, Suite 100, Beaumont, TX 77706; 3870 College St, Ste 100, Beaumont, TX 77701; and 5885 Eastex Fwy, Beaumont, TX 77706), Lufkin (e.g., 2906 Brentwood Dr, Ste 200, Lufkin, TX 75901), Sherman (e.g., 405 N US Hwy 75, Sherman, TX 75090), Texarkana (e.g., 4210 Saint Michael Dr, Texarkana, TX 75503; 3741 Mall Dr, Texarkana, TX 75501; and 2004 St Michael Dr, Texarkana,

TX 75503), Plano (e.g., 2800 N Central Expy, Plano, TX 75074; 1110 Parker Road East, Suite C, Plano, TX 75074; 1701 Dallas Pkwy, Plano, TX 75093; 7000 Independence Parkway, Suite 168, Plano, TX 75025; 1913 Preston Rd, Ste 100, Plano, TX 75093; and 5800 Legacy Dr, Suite C-9, Plano, TX 75024), McKinney (e.g., 1751 N Central Expy, Mckinney, TX 75070; 3650 W University Dr, Mckinney, TX 75071; 2811 Craig Dr, Ste 104, Mckinney, TX 75070; 3009 S Custer Road #300, Mckinney, TX 75070; 1521 W University Dr 130, Mckinney, TX 75069; and 8910 State Hwy 121, Suite 200, Mckinney, TX 75070), and Frisco (e.g., 3333 Preston Rd, Frisco, TX 75034; 5722 Eldorado Pkwy, Suite 120, Frisco, TX 75033; 2155 University Dr, Ste 150, Frisco, TX 75033; 7135 Preston Rd, Ste 200, Frisco, TX 75034; 2601 Preston Rd, Space #2200, Frisco, TX 75034; and 252 W Stonebrook Pkwy, Suite 570, Frisco, TX 75034). *See, e.g.*, https://www.t-mobile.com/stores/tx (last visited October 18, 2023).

15.     T-Mobile has numerous employees who work in Texas and within the Eastern District of Texas, including at its many retail stores and at its corporate offices in Frisco, Texas.

16.     T-Mobile has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits directly related to T-Mobile's infringement of the Patents-In-Suit.

17.     In other recent actions, T-Mobile has either admitted or not contested that the Eastern District of Texas is a proper venue for patent infringement actions against it.  *See, e.g.*, *Wireless Alliance, LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, No. 2:23-cv-00096, Dkt. 14 ¶ 3 n.3 (E.D. Tex. May 26, 2023) ("T-Mobile does not contest … venue is proper in this District …."); *Solstice Wireless LLC v. T-Mobile USA, Inc.*, No. 4:22-cv-00723, Dkt. 8 ¶ 25 (E.D. Tex. Nov. 7, 2022) ("Defendants do not contest that venue is proper as to T-Mobile USA.").

11270019

## THE PATENT-IN-SUIT

18.     U.S. Patent No. 10,951,359 ("the '359 Patent" or "Patent-In-Suit") was duly and legally issued on March 16, 2021, for an invention titled, "Method and Apparatus For Providing Control Resource Set Configuration In A Wireless Communication System."

19.     Plaintiffs own all rights to the Patent-In-Suit that are necessary to bring this action, including all rights to sue for infringement and to recover past and future damages.  Celerity is the exclusive licensee of the Patent-In-Suit, and ATL is the owner by assignment of the Patent-In-Suit. Patent owner ATL has voluntarily joined as a Plaintiff in this litigation.

20.     T-Mobile is not currently licensed to practice the Patent-In-Suit.

21.     The Patent-In-Suit is valid and enforceable.

22.     T-Mobile has had knowledge and notice of the Patent-In-Suit, and its infringement thereof, at least since February 1, 2023, when Plaintiffs provided T-Mobile access to claim charts evidencing T-Mobile's infringement of the Patent-In-Suit.

## PLAINTIFFS' COMPLIANCE WITH THE ETSI IPR POLICY
## AND DEFENDANTS' FAILURE TO COMPLY

23.     The European Telecommunications Standards Institute ("ETSI") is an independent, non-profit standard setting organization ("SSO") that produces globally-accepted standards in the telecommunications industry.  In addition to its own activities, ETSI is also one of several SSOs that are organization partners of the Third Generation Partnership Project ("3GPP"), which maintains and develops globally applicable technical specifications, including for 3G, 4G, and 5G wireless communication technologies.  ETSI and its members have developed global standards that ensure worldwide interoperability between wireless networks, network operators, and devices.

24.     ETSI has developed and promulgated an IPR Policy, which is intended to strike a balance between the need for open standards on the one hand, and the rights of IPR owners on the other hand.  Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical

practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."  ETSI IPR Policy § 15.6 (Nov. 30, 2022).

25.    In an abundance of caution and to ensure their compliance with ETSI's IPR Policy, the Plaintiffs informed T-Mobile that they were prepared to grant T-Mobile an irrevocable license to the Plaintiffs' patents that relate to 3G, 4G, and/or 5G wireless technologies, including to the Patent-In-Suit, on license terms that are Fair, Reasonable, and Non-Discriminatory ("FRAND"). The ETSI IPR Policy entitles a FRAND license to implementers that "MANUFACTURE …, sell, lease, or otherwise dispose of, … repair, use, or operate EQUIPMENT," and/or "use METHODS":

| 6 | Availability of Licences |
|---|---|

6.1    When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR to at least the following extent:

-    MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;

-    sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;

-    repair, use, or operate EQUIPMENT; and

-    use METHODS.

The above undertaking may be made subject to the condition that those who seek licences agree to reciprocate.

ETSI IPR Policy § 6.1 (Nov. 30, 2022).

26.    Not later than August 25, 2022, the Plaintiffs sent T-Mobile correspondence initiating Plaintiff's good faith efforts to license their patents to T-Mobile on FRAND terms.

27.    Over the following months, the Plaintiffs' representatives corresponded with T-Mobile representatives on several occasions.  During such correspondence, the Plaintiffs' representatives provided, in good faith, materials concerning their patents and technical details evidencing the use of their patents, including the Patent-In-Suit.  For example, not later than February 1, 2023, the Plaintiffs' representatives provided T-Mobile credentials to access an online

data room containing numerous example claim charts evidencing the use of Plaintiffs' patents, including the Patent-In-Suit.

28.     The Plaintiffs' representatives have provided T-Mobile multiple opportunities to license the Plaintiffs' patents on FRAND terms.

29.     To date, T-Mobile has not reciprocated the Plaintiffs' good faith efforts to negotiate a FRAND license.  T-Mobile has failed to negotiate in good faith.  T-Mobile has instead declined to take a license to the Plaintiffs' valuable intellectual property, including the Patent-In-Suit.

30.     T-Mobile has operated and continues to operate the T-Mobile Wireless Networks without a license to the Plaintiffs' patents, including the Patent-In-Suit.  Given T-Mobile's unwillingness to license the Plaintiffs' patents, or to cease its infringement, the Plaintiffs have filed this lawsuit for the purpose of protecting their patent rights in the United States.

31.     The parties' licensing negotiations have been unsuccessful because T-Mobile has refused to engage in a good faith licensing discussion concerning the Plaintiffs' valuable patents.

## GENERAL INFRINGEMENT ALLEGATIONS

32.     T-Mobile has imported/exported into/from the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States, the T-Mobile Wireless Networks that infringe the Patent-In-Suit.  For example, and as will be outlined further below, the T-Mobile Wireless Networks infringe the Patent-In-Suit in providing wireless services.

33.     T-Mobile employed 3G technology in the T-Mobile Wireless Networks for much of the past decade.  Given the significant advancements subsequently made with 4G and 5G technologies, T-Mobile reportedly discontinued its 3G wireless network coverage on February 22, 2022.  *See, e.g.*,  https://www.t-mobile.com/support/coverage/t-mobile-network-evolution  (last visited October 18, 2023).

34.     T-Mobile added 4G technology (also sometimes referred to as "LTE" or "4G LTE") to the T-Mobile Wireless Networks more than decade ago, with T-Mobile reporting on March 26,

2013 that it "debuted its blazing fast 4G LTE network service in seven major metropolitan areas."

https://www.t-mobile.com/news/press/t-mobile-makes-bold-un-carrier-moves (last visited

October 18, 2023).  Within two years later, T-Mobile touted that "T-Mobile's 4G LTE network –

America's Fastest – covered 265 million people at the end of 2014."  https://www.t-

mobile.com/news/press/t-mobile-fourth-quarter-and-full-year-results-2014 (last visited October

18, 2023).  As of the filing of this Complaint, 4G coverage remains active in the T-Mobile Wireless

Networks.  *See* https://www.t-mobile.com/coverage/coverage-map (last visited October 18, 2023).

35.     T-Mobile began adding 5G technology to the T-Mobile Wireless Networks at least

by early 2018, with T-Mobile reporting in February 2018 that "T-Mobile plans to build out 5G in

30 cities this year."  https://www.t-mobile.com/news/press/mwc-2018-5g (last visited October 18,

2023).  By December 2, 2019, T-Mobile had expanded the scope of its 5G coverage across the

United States, with T-Mobile reporting that "America gets its first nationwide 5G network today,

covering more than 200 million people and more than 1 million square miles."  https://www.t-

mobile.com/news/press/americas-first-nationwide-5g-network (last visited October 18, 2023).  As

of the filing of this Complaint, T-Mobile advertises that it has "America's largest and fastest 5G

network" and that "T-Mobile's 5G coverage area is bigger than AT&T and Verizon's combined."

https://www.t-mobile.com/coverage/4g-lte-5g-networks (last visited October 18, 2023).

36.     As of the filing of this Complaint, the T-Mobile Wireless Networks continue to

actively employ both 4G and 5G technologies throughout the United States, including in the

Eastern District of Texas.  In many geographic locations, the T-Mobile Wireless Networks employ

both 4G and 5G technologies concurrently, allowing end-user devices to utilize the best connection

that the device is capable of supporting.  T-Mobile's website provides a map showing the

geographic coverage for 4G and 5G within the T-Mobile Wireless Networks:



*See, e.g.*, https://www.t-mobile.com/coverage/coverage-map (last visited October 18, 2023).

37.   The T-Mobile Wireless Networks employ what T-Mobile refers to as both "5G Extended Range" and "5G Ultra Capacity" variants of 5G.   As T-Mobile explains on its website:   "Ultra Capacity 5G includes our mid-band and/or mmWave 5G. … Ultra Capacity 5G can deliver speeds as fast as wi-fi (and sometimes faster) right to your phone."   https://www.t-mobile.com/coverage/4g-lte-5g-networks (last visited October 18, 2023).   5G Ultra Capacity uses "carrier aggregation" by "combining three channels" of spectrum, "which in tests produced peak speeds topping 3 Gbps." https://www.t-mobile.com/news/network/t-mobile-lights-up-standalone-ultra-capacity-5g-nationwide (last visited October 18, 2023).   Separately, T-Mobile's "5G Extended Range" service uses the low-band 600mhz spectrum, which has broader range than the mid-band "5G Ultra Capacity" service.   As T-Mobile explains on its website:   "Extended Range 5G is the foundation of our nationwide 5G network and brings 5G service to big cities, rural towns, and more places in between.   Currently, our Extended Range 5G can deliver average download

speeds 2X as fast as our LTE."  https://www.t-mobile.com/coverage/extended-range-compatible-devices (last visited October 18, 2023).  As used in this Complaint, the term "5G" is intended to encompass all variants of 5G used by the T-Mobile Wireless Networks.

38.     T-Mobile has frequently touted the benefits of 3G, 4G, and 5G technologies in the T-Mobile Wireless Networks.  For example, as T-Mobile presently states on its website:  "5G is the next generation of wireless network technology that's fueling innovation, and transforming how people live, work, and play with unmatched data speeds, greater network capacity, ultra-low latency, and higher reliability."   https://www.t-mobile.com/5g (last visited October 18, 2023). T-Mobile touts that "5G can be massively faster than 4G and 3G speed—with the capability to deliver speeds as fast as Wi-Fi."  *Id.*  For example, T-Mobile states that, "[w]ith superior speeds of up to 20 Gbps, you can download a full 8k movie in seconds, experience tech such as VR, AR, automated driving, and connect even more devices than ever before."  *Id.*  T-Mobile further advertises the benefit that "5G networks can be built in different ways from multiple bands of wavelength spectrum (also known as radio frequencies) to carry information through the air: Low-band, mid-band, and high-band."  *Id.*  T-Mobile claims that it has "America's largest and fastest 5G network, with more 5G network awards than any other carrier."  *Id.*  T-Mobile has likewise in the past advertised the benefits of 4G and 3G in the T-Mobile Wireless Networks, including in particular during periods when those were the leading technologies.  T-Mobile still advertises the benefits of 4G today, for example, with T-Mobile currently stating on its website: "4G LTE speeds were far faster than 3G—up to 100,000 Kbps. That means you could download a movie in about seven minutes, video chat, stream content, and use cloud services."  *Id.*

39.     T-Mobile has directly and indirectly infringed, and continues to directly and indirectly infringe, each of the Patent-In-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not limited to making, using, selling and offering

to sell, in this District and elsewhere in the United States, and importing into and exporting from the United States, products and/or services that infringe the Patent-In-Suit.

40.     T-Mobile has directly infringed and continues to directly infringe the Patent-In-Suit, as provided in 35 U.S.C. § 271(a), including at least by T-Mobile making, using, selling, offering to sell, and/or importing the T-Mobile Wireless Networks.  For example, and as will be outlined further below, the T-Mobile Wireless Networks infringe the Patent-In-Suit in providing wireless services.

41.     T-Mobile has also indirectly infringed and continues to indirectly infringe the Patent-In-Suit, as provided in 35 U.S.C. § 271(b), including at least by inducing infringement by others, such as T-Mobile's customers and end-users, in this District and elsewhere in the United States, to use the T-Mobile Wireless Networks in manners that infringe the Patent-In-Suit.  For example, T-Mobile's customers and end-users directly infringe via their use of the T-Mobile Wireless Networks, infringing the Patent-In-Suit.  T-Mobile induces such direct infringement through its affirmative acts of making, using, selling, offering to sell, and/or importing the T-Mobile Wireless Networks, as well as by advertising its wireless network technologies and providing instructions, documentation, and other information to its customers and end-users to encourage and teach them how to use the infringing wireless network technologies, including but not limited to by T-Mobile providing in-store and online technical support, marketing materials, product manuals, advertisements, and other product documentation.  T-Mobile performs these affirmative acts with knowledge of the Patent-In-Suit and with the intent, or willful blindness, that the induced acts directly infringe the Patent-In-Suit.

42.     T-Mobile has also indirectly infringed and continues to indirectly infringe the Patent-In-Suit, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as T-Mobile's customers and end-users, in this District and elsewhere in the United States.  T-Mobile's affirmative acts of selling and offering to sell wireless services

in this District and elsewhere in the United States, and causing the T-Mobile Wireless Networks to be manufactured, used, sold, and offered for sale, contribute to T-Mobile's customers and end-users use of the T-Mobile Wireless Networks, such that the Patent-In-Suit are directly infringed. The accused components in the T-Mobile Wireless Networks are material to the inventions claimed in the Patent-In-Suit, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by T-Mobile to be especially made or adapted for use in the infringement of the Patent-In-Suit.  T-Mobile performs these affirmative acts with knowledge of the Patent-In-Suit and with the intent, or willful blindness, that they cause direct infringement of the Patent-In-Suit.

43.     T-Mobile's infringement of the Patent-In-Suit has caused damage to the Plaintiffs. The Plaintiffs are entitled to recover from T-Mobile the damages sustained by the Plaintiffs as a result of T-Mobile's wrongful acts in an amount subject to proof at trial.

44.     T-Mobile's infringement of the Patent-In-Suit has been and continues to be willful. T-Mobile has had knowledge and notice of the Patent-In-Suit, and its infringement thereof, at least since February 1, 2023, when Plaintiffs provided T-Mobile access to claim charts evidencing T-Mobile's infringement of the Patent-In-Suit.  Despite this, T-Mobile continues without license to make, use, sell, offer to sell, and/or import products and/or services that infringe the Patent-In-Suit, including the T-Mobile Wireless Networks, thereby willfully continuing T-Mobile's infringement.

45.     In the interest of providing detailed averments of infringement, the Plaintiffs below demonstrate infringement for at least one claim of the Patent-In-Suit.  However, the exemplary claims and exemplary mappings provided herein should not be considered limiting, and additional claims and mappings will be disclosed per the Court's rules relating to infringement contentions.

## COUNT I:  INFRINGEMENT OF THE '359 PATENT

46.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

47.     U.S. Patent No. 10,951,359 ("the '359 Patent" or "Patent-In-Suit") was duly and legally issued on March 16, 2021, for an invention titled, "Method and Apparatus For Providing Control Resource Set Configuration In A Wireless Communication System."

48.     Plaintiffs own all rights to the '359 Patent that are necessary to bring this action.

49.     T-Mobile is not currently licensed to practice the '359 Patent.

50.     T-Mobile infringes, contributes to the infringement of, and/or induces infringement of the '359 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States the T-Mobile Wireless Networks.

51.      For example, the T-Mobile Wireless Networks infringe at least claim 1 of the '359 Patent in providing 5G wireless services.  For example, and to the extent the preamble is limiting, the T-Mobile Wireless Networks practice a method of a network node.  For example, the T-Mobile Wireless Networks practice a method of a network node in providing 5G wireless services. On information and belief, this functionality requires the T-Mobile Wireless Networks in their entirely assembled form, as specifically provisioned and operated by T-Mobile.

52.     The T-Mobile Wireless Networks further practice the step of transmitting a signal indicating at least a first duration and a bitmap.  For example, in providing 5G wireless services, the T-Mobile Wireless Networks practice the step of transmitting a radio resource control ("RRC") reconfiguration message indicating at least a first duration of a control resource set ("CORESET") and a bitmap for monitoring symbols within a slot.  On information and belief, this functionality requires the T-Mobile Wireless Networks in their entirely assembled form, as specifically provisioned and operated by T-Mobile.

53.     The T-Mobile Wireless Networks further practice the foregoing method wherein the first duration is time duration of a control resource set (CORESET).  For example, in providing 5G wireless services, the T-Mobile Wireless Networks practice the foregoing method wherein the duration is a time duration of the CORESET in number of symbols.  On information and belief, this functionality requires the T-Mobile Wireless Networks in their entirely assembled form, as specifically provisioned and operated by T-Mobile.

54.     The T-Mobile Wireless Networks further practice the foregoing method wherein the bit map includes a set of bit positions, where each bit position has a value of one or zero and each bit position with the value of one indicates a starting Orthogonal Frequency Division Multiplexing (OFDM) symbol of a monitoring occasion of the CORESET within a slot.  For example, in providing 5G wireless services, the T-Mobile Wireless Networks practice the foregoing method wherein the bitmap for monitoring symbols within a slot includes a set of bit positions each with a value of one or zero, with the most significant bit representing the first OFDM symbol in a slot, the second most significant bit representing the second OFDM symbol, and so on, and where each bit set to one indicates a starting OFDM symbol of a monitoring occasion of the CORESET within the slot.  On information and belief, this functionality requires the T-Mobile Wireless Networks in their entirely assembled form, as specifically provisioned and operated by T-Mobile.

55.     The T-Mobile Wireless Networks further practice the step of not allowing to transmit the signal such that an interval between any two bit positions with the value of one in the set of bit positions in the bit map is smaller than the first duration.  For example, in providing 5G wireless services, the T-Mobile Wireless Networks practice the step of not allowing transmission of a bitmap for monitoring symbols within a slot if the interval between any two bit positions with the value of one in the bitmap is smaller than the defined time duration of the CORESET in number

of symbols.   On information and belief, this functionality requires the T-Mobile Wireless Networks in their entirely assembled form, as specifically provisioned and operated by T-Mobile.

56.    Accordingly, as illustrated above, the T-Mobile Wireless Networks directly infringe one or more claims of the '359 Patent.  T-Mobile makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, the T-Mobile Wireless Networks and thus directly infringes the '359 Patent.

57.    T-Mobile has also indirectly infringed and continues to indirectly infringe the '359 Patent, as provided in 35 U.S.C. § 271(b), including at least by inducing infringement by others, such as T-Mobile's customers and end-users, in this District and elsewhere in the United States, to use the T-Mobile Wireless Networks in manners that infringe the '359 Patent.  For example, T-Mobile's customers and end-users directly infringe via their use of the T-Mobile Wireless Networks to access and use 4G and 5G wireless network technologies, infringing the '359 Patent. T-Mobile induces such direct infringement through its affirmative acts of making, using, selling, offering to sell, and/or importing the T-Mobile Wireless Networks, as well as by advertising its infringing wireless network technologies and providing instructions, documentation, and other information to its customers and end-users to encourage and teach them how to use the infringing wireless network technologies, including but not limited to by T-Mobile providing in-store and online technical support, marketing materials, product manuals, advertisements, and other product documentation.  T-Mobile performs these affirmative acts with knowledge of the '359 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '359 Patent.

58.    T-Mobile has also indirectly infringed and continues to indirectly infringe the '359 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as T-Mobile's customers and end-users, in this District and elsewhere in the United States.  T-Mobile's affirmative acts of selling and offering to sell wireless services in this District and elsewhere in the United States, and causing the T-Mobile Wireless Networks to be

manufactured, used, sold, and offered for sale, contribute to T-Mobile's customers and end-users use of the T-Mobile Wireless Networks, such that the '359 Patent is directly infringed.  The accused components in the T-Mobile Wireless Networks are material to the inventions claimed in the '359 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by T-Mobile to be especially made or adapted for use in the infringement of the '359 Patent.  T-Mobile performs these acts with knowledge of the '359 Patent and with the intent, or willful blindness, that they cause direct infringement of the '359 Patent.

59.     T-Mobile's infringement of the '359 Patent has damaged and will continue to damage the Plaintiffs.

60.     T-Mobile has had knowledge of the '359 Patent, and its infringement thereof, at least since February 1, 2023, when Plaintiffs provided T-Mobile access to claim charts evidencing T-Mobile's infringement of the '359 Patent.  T-Mobile continues without license to make, use, sell, offer to sell, and/or import the T-Mobile Wireless Networks, willfully continuing T-Mobile's infringement.

### COUNT II:  DECLARATORY JUDGMENT THAT THE PLAINTIFFS HAVE COMPLIED WITH ETSI OBLIGATIONS AND COMPETITION LAW AND THAT THE DEFENDANTS HAVE NOT

61.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

62.     In an abundance of caution and to ensure their compliance with ETSI's IPR Policy, the Plaintiffs informed T-Mobile that they were prepared to grant T-Mobile a license, on FRAND terms, to the Plaintiffs' patents that relate to T-Mobile's infringing Wireless Networks.

63.     Not later than August 25, 2022, the Plaintiffs sent T-Mobile correspondence initiating the Plaintiff's good faith efforts to license their patents to T-Mobile on FRAND terms.

64.     Over the following months, the Plaintiffs' representatives routinely corresponded with T-Mobile representatives on several occasions.  The Plaintiffs' representatives provided, in

good faith, materials concerning their patents and technical details evidencing the use of their patents, including the Patent-In-Suit.  For example, not later than February 1, 2023, the Plaintiffs' representatives provided T-Mobile credentials to access an online data room containing numerous example claim charts evidencing the use of Plaintiffs' patents, including the Patent-In-Suit.

65.    The Plaintiffs have provided T-Mobile multiple opportunities to license the Plaintiffs' patents on FRAND terms.  Despite this, T-Mobile has not reciprocated Plaintiffs' good faith efforts.  T-Mobile has instead declined to take a FRAND license, while continuing to operate the infringing T-Mobile Wireless Networks without a license to the Plaintiffs' patents.

66.    The parties' FRAND license negotiations have been unsuccessful because T-Mobile has not negotiated in good faith.  T-Mobile has failed to reciprocate the Plaintiffs' good faith efforts.

67.    There are disputes between the Plaintiffs and T-Mobile concerning, among other things, whether T-Mobile is infringing the Patent-In-Suit, whether T-Mobile must take a license to the Patent-In-Suit, and what terms that license should include (whether FRAND terms or otherwise).  The Plaintiffs have fully performed all obligations they may have under the FRAND contract, but T-Mobile has refused to license Plaintiffs' patents on the FRAND terms the Plaintiffs have offered.  T-Mobile also has not reciprocated the Plaintiffs' efforts to negotiate a FRAND license in good faith.  There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of declaratory judgment.

68.    Accordingly, the Plaintiffs request a declaratory judgment by this Court finding that Plaintiffs' actions in connection with their negotiations toward a FRAND license with T-Mobile were conducted by Plaintiffs in good faith, complied with the ETSI IPR Policy, and were consistent with competition law requirements.

En dehors

69.     Further, the Plaintiffs request a declaratory judgment by this Court finding that T-Mobile has not negotiated with Plaintiffs in good faith, has not complied with ETSI's IPR Policy, and has waived any rights it may have under the ETSI IPR Policy.

## DAMAGES

70.     As a result of Defendant's acts of infringement, Plaintiffs have suffered actual and consequential damages.  To the fullest extent permitted by law, Plaintiffs seek recovery of damages at least in the form of reasonable royalties.

## DEMAND FOR JURY TRIAL

71.     Plaintiffs hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor ordering, finding, declaring, and/or awarding Plaintiffs relief as follows:

A.     that T-Mobile infringes the Patent-In-Suit;

B.     an award of damages resulting from T-Mobile's acts of infringement in accordance with 35 U.S.C. § 284;

C.     that T-Mobile's infringement of the Patent-In-Suit is willful;

D.     enhanced damages pursuant to 35 U.S.C. § 284;

E.     a declaration that Plaintiffs, in their history of negotiations with T-Mobile in regard to a global license to the Plaintiffs' patents, have negotiated in good faith and have complied with the ETSI IPR Policy and any applicable laws, and with competition law;

F.     a declaration that T-Mobile has not negotiated in good faith, has not complied with the ETSI IPR Policy, and has waived any rights it may have under the ETSI IPR Policy;

G.     that this is an exceptional case and awarding the Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

H.      an accounting for acts of infringement and supplemental damages for infringement and/or damages not presented at trial, including, without limitation, pre-judgment and post-judgment interest;

I.       all equitable relief the Court deems just and proper; and

J.       such other relief which may be requested and to which the Plaintiffs are entitled.


DATED:  October 19, 2023                              Respectfully submitted,

                                                      /s/ *Robert Christopher Bunt*

                                                      Robert C. Bunt
                                                      Texas State Bar No. 00787165
                                                      rcbunt@pbatyler.com
                                                      **PARKER, BUNT & AINSWORTH, P.C.**
                                                      100 E. Ferguson, Suite 418
                                                      Tyler, Texas 75702
                                                      Tel:  (903) 531-3535

                                                      Jason Sheasby
                                                      California State Bar No. 205455
                                                      (*pro hac vice* to be filed)
                                                      jsheasby@irell.com
                                                      Hong (Annita) Zhong, PhD
                                                      California State Bar No. 266924
                                                      (*pro hac vice* to be filed)
                                                      hzhong@irell.com
                                                      Christopher Abernethy
                                                      California State Bar No. 275986
                                                      (*pro hac vice* to be filed)
                                                      cabernethy@irell.com
                                                      Tony Rowles
                                                      California State Bar No. 301209
                                                      (*pro hac vice* to be filed)
                                                      trowles@irell.com
                                                      **IRELL & MANELLA LLP**
                                                      1800 Avenue of the Stars, Suite 900
                                                      Los Angeles, CA 90067-4276
                                                      Tel:  (310) 277-1010

                                                      **ATTORNEYS FOR PLAINTIFFS**
                                                      **ASUS TECHNOLOGY LICENSING INC.**
                                                      **AND CELERITY IP, LLC**